IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| SINCLAIR BROADCAST GROUP, INC., | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: MJG-03-341 |
| MICHAEL DRAMAN, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
OF SINCLAIR BROADCAST GROUP, INC.**

Plaintiff, Sinclair Broadcast Group, Inc. ("SBG"), by and through its undersigned counsel, and in support of its motion for summary judgment against Defendant, Michael Draman ("Draman"), states as follows:

**I.   Introduction**

In this lawsuit, SBG seeks to recover the amount of $201,910.69, plus additional accrued interest, late fees, attorneys' fees and costs. The $201,910.69 represents the unpaid balance Draman owed as of December 19, 2002 under a credit line agreement that Draman originally entered into with NationsBank, N.A. ("NationsBank"). On December 19, 2002, SBG purchased all of NationsBank's rights and interests in connection with the credit line agreement. There is no genuine dispute of material fact. SBG is entitled to judgment in its favor as a matter of law.

Summary judgment is appropriate if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The trial

court's function on such a motion is to identify whether there are genuine issues of material fact that require resolution by the trier of fact. *Liberty Lobby*, 477 U.S. at 250. The function of a motion for summary judgment is to "smoke out" whether there is any genuine dispute of material fact and, if not "to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." *Bland v. Norfolk & Southern R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969).

Under Fed. R. Civ. P. 56(e), where the movant has made a properly-supported motion, the opposing party cannot simply rely upon the allegations or denials in his or her pleadings. The respondent must demonstrate sufficient evidence, including sufficient facts, showing that there are genuine issues of material fact for trial. *Liberty Lobby*, 477 U.S. at 248-50. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the granting of such a motion. In other words, only <u>genuine</u> issues that relate to <u>material</u> facts will defeat a motion for summary judgment. Facts that do not relate to the legal elements of a claim are not material. *Columbus McKinnon Corp. v. China Semiconductor Co.*, 867 F. Supp. 1173, 1175 (W.D.N.Y. 1994). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Newton v. A.B. Dick Co.*, 738 F.Supp. 955, 957 (D.Md. 1990).

## II.    Statement of Facts

Draman and NationsBank, N.A. ("NationsBank") entered into a NationsBank Premium CreditLine$^{sm}$ Agreement and Disclosure Statement (the "CreditLine Agreement") establishing a line of credit, Account No. 00519940142496 (the "Account"). The CreditLine Agreement was dated as of May 8, 1997. A true and accurate copy of the CreditLine Agreement is attached as Exhibit B. *See* Affidavit of Barry Faber, Esquire, attached as Exhibit A, at ¶ 3. NationsBank

made certain advances to Draman on the Account pursuant to the terms of the CreditLine Agreement. A true and accurate copy of the Account Transaction History with respect to the Account is attached hereto as Exhibit C (the "Account Transaction History"). *See* Faber Affidavit at ¶ 4.

Under the terms of the CreditLine Agreement, Draman was required to make timely Total Minimum Payments Due on the Account, as defined in the CreditLine Agreement. The CreditLine Agreement defines "Total Minimum Payments Due," in pertinent part, as follows:

> The Total Minimum Payment Due is equal to the Minimum Payment and any past due amounts from prior billing periods. The Total Minimum Payment Due will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid Fees.

CreditLine Agreement at 1, § 6.B.

The CreditLine Agreement defines "Minimum Payment" based upon either a monthly payment option or a quarterly payment option. *Id*. The Account Transaction History establishes that Draman selected the monthly payment option. Accordingly, the amount of each monthly Minimum Payment is calculated based upon the following three options:

> **Interest Only (Plus Insurance) Option** – The Minimum Payment will be the amount of accrued interest, plus any voluntary insurance and unpaid Fees.
>
> **3.0% of Outstanding Balance Option** – The Minimum Payment will be three percent (3.0%) of the Outstanding Balance plus any unpaid Fees, **or** fifty dollars ($50), whichever is greater, or the Outstanding Balance if less than $50.
>
> **Fixed Payment Option** – The Minimum Payment will be at least three percent (3.0%) of the Line plus any unpaid Fees, **or** fifty dollars ($50), whichever is greater, **or** the Outstanding Balance if less than $50.

*Id*. at 2, § 6.B.

As is set forth on the Account Transaction History, in or about June 2002 Draman ceased making any payments whatsoever in connection with the CreditLine Agreement. He made no

3

further Total Minimum Payments Due. *See* Exhibit C. Draman's failure to make payments constitutes a default under the terms of the CreditLine Agreement, which provides in pertinent part as follows:

> **14.     What Causes a Default of This Agreement?** If (a) you fail to make the Total Minimum Payment Due by the due date, (b) you break or do not meet any condition of this Agreement, . . . then you will be in default of this Agreement. If you are in default we may do any or all of the following (i) . . . declare all amounts owing on the Account to be immediately due and payable in one payment without notice, . . . or (vii) bring legal action against you. All of our rights and remedies are cumulative and may be pursued singularly, successively or together, at our option.
>
> If we bring legal action against you, the interest rate in effect at the time legal action is commenced shall be used to establish any post judgment award of interest, unless prohibited by applicable law. If we referred collection of the Account to an attorney . . . you will pay our reasonable attorneys' fees plus court costs and all other fees as allowed by law.

CreditLine Agreement at 3, § 14.

By letter dated as of November 11, 2002, NationsBank properly gave notice to Draman that he was in default of his obligations with respect to the CreditLine Agreement and the Account and declared the entire balance of the Account immediately due and payable. A true and accurate copy of NationsBank's November 11, 2002 notice to Draman is attached as Exhibit D.

The CreditLine Agreement provides, *inter alia*, that Draman is liable to NationsBank for the principal, interest and fees due pursuant to the CreditLine Agreement, as set forth in the Account Transaction History. In addition, he must pay any additional Late Payment Fees of 5% of Total Minimum Payments Due, a reasonable attorneys' fee of 15%, or such higher amount as the Court may deem reasonable, plus all other costs of collection, plus court costs:

> **10.     Are There Other Fees or Charges That Could Be Charged?** The following fees and charges ("Fees") may be imposed, if applicable. If imposed, the Fee is added to the Account without incurring a Finance Charge. . . . Late

4

> Payment Fee – Five percent (5%) of the unpaid portion of the Total Minimum Payment Due not received within ten (10) days after the due date. Attorneys' Fees and Collection Costs – You will be responsible for our reasonable attorneys' fees (if we refer the Account to any attorney for collection who is not our salaried employee) equal to fifteen percent (15%) of the Outstanding Balance or such higher amount as a court may deem reasonable or such maximum amount as may be provided by applicable law if lower, plus all other costs of collection and any court costs awarded by the court. . . . To the extent allowed by applicable law, we may increase any or all of the Fees described above by twenty percent (20%) of the existing Fee each calendar year.

CreditLine Agreement at 2-3, § 10.

The CreditLine Agreement provides that NationsBank may assign or transfer its rights with respect to the CreditLine Agreement and the Account:

> **23.   Can the Account Be Assigned or Transferred?**  We may assign or transfer to another person or entity the Account (or any part of it, including Outstanding Balance) or this Agreement at any time.  The person or entity to whom we transfer or assign the Account or this Agreement will have all of our rights under this Agreement.  You cannot assign or transfer any of your rights or responsibilities under this Agreement or any part of the Account.  This Agreement is binding upon your heirs and legal representatives.

*Id*. at 4, § 23.

By a Loan Sale Agreement dated as of December 16, 2002, SBG purchased all of NationsBank's interest in the CreditLine Agreement and the Account for the total sum of $201,910.69.[1]  A true and accurate copy of the Loan Sale Agreement is attached as Exhibit E. SBG has therefore succeeded to all of NationsBank's rights and interests in connection with the CreditLine Agreement and the Account.  Draman is now liable to SBG pursuant to the terms of the CreditLine Agreement and the Account.

This action was filed on January 2, 2003.  The Wall Street Journal Prime Rate of 4.25% has been in effect continuously since November 7, 2002.  *See* Wall Street Journal Money Rates

---

1   The Loan Sale Agreement is dated as of December 16, 2003, but the transaction occurred on December 19, 2003.  SBG paid NationsBank the amount owed as of that date.

table attached as Exhibit F.  Thus, the Annual Percentage Rate of 4.5% (0.25% above Wall Street Journal Prime) applies to the Outstanding Balance from the date on which SBG purchased the loan until Draman's indebtedness is paid in full.  *See* CreditLine Agreement at 1; 2 at § 8B.  A true and accurate Statement of Damages showing the calculation of damages as of April 4, 2003 is attached as Exhibit G.  As of April 4, 2003, SBG's damages total $235,414.14.

### III.   Argument

The undisputed and uncontroverted facts set forth above show (1) that under the CreditLine Agreement Draman owes a contractual obligation to repay the Account, (2) that SBG has succeeded to all of NationsBank's rights with respect to the CreditLine Agreement and the Account, (3) that Draman has materially breached his obligation to repay the Account, (4) that as of December 19, 2002 the principal, interest and fees owed pursuant to the CreditLine Agreement and the Account was $201,910.69, and (5) that as of April 4, 2003 the amount of damages of $235,414.14 remains unpaid.  These facts establish the elements of a breach of contract claim.  *E.g., Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480, 369 A.2d 566, 569 (1977).  Consequently, the record evidence establishes that SBG is entitled to judgment in its favor as a matter of law.

### IV.   Conclusion

The record evidence conclusively establishes that Draman has breached his payment obligations to SBG and that SBG has thereby sustained damages.  As of April 4, 2003, those damages are $235,414.14, inclusive of prejudgment interest from December 19, 2002 to April 4, 2003 at the rate of 4.5%, plus a reasonable attorneys fee of 15%, plus costs.  SBG is also entitled to additional prejudgment interest from April 4, 2003 to the date of judgment, any additional costs incurred, and postjudgment interest.  Accordingly, the Court should grant summary

judgment against Draman and in favor of SBG in the amount of $235,414.14, plus additional prejudgment interest from April 4, 2003 through the date of judgment and award SBG such other and further relief as justice and the nature of this cause may demand.

                                        /S/
                        Severn E.S. Miller, Fed. Bar No. 11617
                        THOMAS & LIBOWITZ, P.A.
                        100 Light Street, Suite 1100
                        Baltimore, Maryland  21202
                        Voice: (410) 752-2468
                        Fax:    (410) 752-2046

                        Attorney for the Plaintiff,
                        Sinclair Broadcast Group, Inc.