IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| SINCLAIR BROADCAST GROUP, INC., | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: MJG-03-341 |
| MICHAEL DRAMAN, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM OF
SINCLAIR BROADCAST GROUP, INC.
IN FURTHER SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Sinclair Broadcast Group, Inc. ("SBG"), by and through its undersigned counsel, pursuant to L.R. 105(a) files this reply memorandum in further support of its motion for summary judgment against Defendant, Michael Draman ("Draman"), stating as follows:

**I.      <u>Introduction</u>**

In its motion for summary judgment, SBG showed that there is no genuine dispute as to any material fact and that it is entitled to summary judgment in its favor as a matter of law in the amount of $235,414.14, plus additional interest through the date of judgment. SBG stated, in pertinent part, as follows:

> The undisputed and uncontroverted facts . . . show (1) that under the CreditLine Agreement Draman owes a contractual obligation to repay the Account, (2) that SBG has succeeded to all of NationsBank's rights with respect to the CreditLine Agreement and the Account, (3) that Draman has materially breached his obligation to repay the Account, (4) that as of December 19, 2002 the principal, interest and fees owed pursuant to the CreditLine Agreement and the Account was $201,910.69, and (5) that as of April 4, 2003 the amount of damages of $235,414.14 remains unpaid. . . .

Memorandum of Law in Support of Summary Judgment at 6, § III.

Draman does not dispute <u>any</u> of these facts. His Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Draman's Opposition") is completely silent on these points. For purposes of this lawsuit, therefore, the merits of SBG's claim are uncontroverted. Draman does not dispute that he owes SBG $235,414.14, plus additional accrued interest from April 4, 2003.

Draman's argument touches upon inapplicable theories of "unclean hands" and duress, but essentially amounts to a claim of offset. He argues that he was entitled to an additional $182,000 from his former employer. But his former employer is an entity different than SBG. Draman concedes that he signed an April 2001 General Release that extinguishes all claims he may have had against either his former employer or SBG. However, Draman now claims that he only signed the release because he was under duress. He now apparently seeks to set aside the General Release, reinstate his alleged claim against his former employer for $182,000, then receive credit for the claimed $182,000 against the amount he concedes he owes to SBG.

There are at least three fundamental flaws in Draman's argument. Each of these flaws is fatal. First, because Draman did not raise the defense of duress in his answer, he has waived that defense. Second, Draman only asserts facts relating to duress at the time he executed the April 2001 General Release. Draman entered into the CreditLine Agreement with NationsBank nearly four years earlier, in May 1997. He does not claim he signed the CreditLine Agreement under duress, or that he was somehow coerced into drawing down $200,000 under the CreditLine Agreement. Those actions were indisputably voluntary. There is simply no evidence to the contrary.

Any alleged duress in connection with the General Release does not vitiate the CreditLine Agreement. Draman does suggest that, contrary to the terms of his fully integrated

Employment Agreement, his former employer had "unclean hands" at the time Draman entered into the CreditLine Agreement with NationsBank. However, that is no defense to the CreditLine Agreement.

Third, Draman admits that his employer was Sinclair Communications, Inc. ("SCI"), not SBG. If he were owed additional salary or bonuses, or if his employer behaved improperly, his claim would be against SCI, not SBG. Draman has never asserted any counterclaim against SBG, nor has he presented facts that would support a counterclaim against SBG in this action. Similarly, Draman has not brought any third-party claim against his former employer, SCI, in this Court or otherwise. The time for joining additional parties has now passed pursuant to the Court's Scheduling Order.

If Draman has a $182,000 claim – or any claim – against SCI, the claim is legally irrelevant to this lawsuit. It cannot defeat SBG's claim against Draman, nor does it lead to any legally cognizable claim of set-off against SBG. A debtor cannot avoid his debts by claiming that someone else owes him money. Set-off is only available when the parties have claims against each other. The facts Draman asserts do not give rise to any claim against SBG.

In sum, Draman's Opposition fails to raise any genuine dispute of material fact with respect to this lawsuit, which is only between Draman and SBG. To the extent that Draman raises any genuine disputes of fact, the facts are not material to this lawsuit. Draman concedes that he owes SBG the claimed amount. SBG is entitled to summary judgment as a matter of law.

## II.   Argument

To defeat SBG's motion for summary judgment, Draman must offer admissible evidence of facts that might affect the outcome of the suit under the governing substantive law. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 1355

(1986); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (9th Cir. 1996) ("Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute"). "A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation." Draman's Opposition at 4 (citation omitted).

Draman has failed to generate any dispute of material fact that could alter the outcome of this case under the applicable law. At best, he has offered a version of events that, if believed, would relate to some claim against his former employer, SCI.[1] Although SBG disputes Draman's version of events, the disputed facts are immaterial to this lawsuit.

    A.    Draman's Affidavit is Defective and is Legally Insignificant to Generate a Genuine Dispute of Material Fact

The affidavit attached to Draman's Opposition is defective and should not be considered. The affidavit does not state whether it was made on personal knowledge or on some other basis. *See* Affidavit of Michael Draman, annexed to Draman's Opposition as Exhibit I (hereinafter "Draman Affidavit"). Affidavits opposing summary judgment "shall be made on personal knowledge." Fed.R.Civ.P. 56(e). Because the Draman Affidavit does not comply with the Rules, it is insufficient to defeat SBG's motion for summary judgment. *See e.g., Cadle Co. v. Hayes*, 116 F.3d 957, 961 (1st Cir. 1997) ("Statements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance."). SBG is therefore entitled to summary judgment.

---

[1] If Draman's issues with SCI had legal significance in this action, SBG would expect the evidence to show that Draman and SCI had a dispute concerning whether Draman's employment was terminated with or without Cause, as that term is used in the Employment Agreement. Draman executed the General Release as part of a negotiated settlement of those disputed matters. However, without waiving its right to contradict Draman's allegations, for purposes of summary judgment SBG will treat his allegations about SCI as accurate.

As is explained more fully below, in addition to failing to comply with the Rules, the Draman Affidavit completely fails to create any genuine dispute of a fact material to this lawsuit. To the extent that the Court concludes that the Draman Affidavit was presented in bad faith, or solely for the purpose of delay, SBG respectfully requests that the Court consider awarding SBG its fees for responding to the Draman Affidavit. *See* Fed.R.Civ.P. 56(g).

B.  <u>Draman Has Waived the Defense of Duress</u>

Assuming, *arguendo*, that the Draman Affidavit presented facts upon personal knowledge, and that Draman's Opposition were therefore supported in accordance with the Rules, duress is not a defense to this lawsuit. Draman's Opposition is properly read as asserting the defense of duress. He refers to it as "unclean hands," but Draman alleges that he "signed the General Release under the threat of reprisal from Sinclair and would not have otherwise signed it." Draman Affidavit at 3, ¶ 11. This is a claim of duress.

Draman did not raise duress in his Answer to the complaint. Duress is one of the specifically enumerated affirmative defenses under Fed.R.Civ.P. 8(c). The Scheduling Order establishes a deadline of March 31, 2003 for amendment of pleadings. Draman did not raise the issue of duress until April 24, 2003, when he filed his Opposition. Generally, if a defendant fails to plead an affirmative defense in its answer, the affirmative defense is waived and excluded as an issue in the case. *E.g., Westfarm Assocs. L.P. v. International Fabricare Inst.*, 846 F.Supp. 439, 440 (D.Md. 1993); *see also Gooch v. Maryland Mechanical Systs.*, 81 Md.App. 376, 567 A.2d 954, *cert. denied*, 319 Md. 484 (1990) (applying the Maryland Rules). Draman's untimely assertion of duress cannot defeat summary judgment in this case.

C.  <u>The Doctrine of "Unclean Hands" Cannot Apply to Bar SBG's Claim for Breach of Contract</u>

Again assuming, *arguendo*, that the Draman Affidavit were made on personal knowledge, it fails to generate any dispute of fact material to this lawsuit. Draman suggests that the alleged duress amounts to inequitable conduct. He claims that SBG failed to mention "<u>SCI's</u> unclean hands in terminating Draman's employment prematurely and therefore forcing him to sign a General Release. . .". Draman's Opposition at 4-5 (emphasis supplied). This argument is remarkably misleading. SBG would have no reason to address whether SCI does or does not have unclean hands. SBG is not SCI.

Draman does not claim that he was under duress when he entered into the CreditLine Agreement. It is unclear what legal significance Draman attaches to it, but he alleges that when he was negotiating for employment at SCI, SCI initially planned to advance him $200,000 against future stock options. Draman's Opposition at 2. According to Draman, SCI later changed its mind and arranged for the CreditLine Agreement. *Id*. Whether or not this occurred, the alleged change is immaterial. An advance is a loan. A line of credit is a loan.. Either way, based upon his own allegations, Draman was always supposed to pay the money back to a lender.

Moreover, these allegations cannot be used to contradict the terms of the Employment Agreement and Schedule A, thereto, which provides that SCI was to provide "a guarantee to [Draman's] lender of an amount not in excess of $200,000." Schedule A to Employment Agreement at 3, § 11.2. In other words, even according to Draman's allegations, SCI did what it promised to do under the written Employment Agreement.

The Employment Agreement is fully integrated. It provides that the Employment Agreement, "including the Schedules attached [thereto], and the LTIP constitute the entire agreement, and <u>supersede all prior agreements and understandings, written or oral, among the</u>

parties with respect to the subject matter of [the Employment} Agreement and the LTIP." Employment Agreement, attached as Exhibit A to Draman Affidavit, at 10, § 8.8.  The effect of such language is to make irrelevant any terms discussed during negotiations but allegedly changed by the time the parties entered into the Employment Agreement.  In any event, there is no suggestion SBG offered an advance or arranged for the CreditLine Agreement.  Once again, Draman's remedy, if any, would be against SCI.

To the extent that Draman's argument can be read to assert unclean hands in connection with the Employment Agreement and/or the General Release, the equitable defense of "unclean hands" does not apply as a matter of law.  It can only apply to equitable claims.  The maxim is that "he who seeks equity must do equity." *E.g., Manufacturers Finance Co. v. McKey*, 294 U.S. 442, 449, 55 S.Ct. 444, 447 (1935).  SBG has not availed itself of the Court's equity jurisdiction.  SBG's Complaint contains only one Count, which asserts breach of contract, a claim at law.  The Complaint seeks no equitable relief.  Where, as here, the plaintiff seeks only a legal remedy, a Court cannot apply the doctrine of "unclean hands" to alter the terms of a written agreement.  *Id*.

Moreover, it "is only when the plaintiff's improper conduct is *the source, or part of the source*, of his equitable claim, that he is to be barred because of [unclean hands]."  *Hicks v. Gilbert*, 135 Md.App. 394, 762 A.2d 986 (2000) (italics in original, other emphasis added).  "'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Schneider v. Schneider*, 96 Md. App. 296, 306, 624 A.2d 1319, 1324-25 (1993) (emphasis supplied), *rev'd on other* grounds, 335 Md. 500 (1994) (quoting *Adams v. Manown*, 328 Md. 463, 476, 615 A.2d 611 (1992); D. Dobbs, *Remedies*. § 2.4 at 46 (1973)).

Neither of these elements are present.  SCI is not the plaintiff in this action.  Draman does not allege that SBG has unclean hands, or that it dirtied them in acquiring its contractual rights

under the CreditLine Agreement. To the contrary, SBG purchased NationsBank's rights under the CreditLine Agreement more than 18 months after Draman signed the General Release. The doctrine of unclean hands is wholly inapplicable.

      D.      <u>Draman's Disputed Allegation that SCI Owes Him $182,000 is Not A Genuine Dispute of Fact That is Material to This Lawsuit</u>

Draman alleges facts that suggest that he might have a defense to enforcement only of the General Release, not the CreditLine Agreement. Draman's affidavit states that he was employed by SCI. Draman Affidavit at ¶¶ 2, 4, 8, and 9. The affidavit states that a true and accurate copy of Draman's Employment Agreement, and the Amendment to it, are attached to his affidavit as Exhibits A and B, respectively. Draman Affidavit at ¶ 4. The Employment Agreement states that it is between "Sinclair Communications, Inc., a Maryland corporation . . ., and Michael Draman . . .". Exhibit A to Draman Affidavit at 1. There is no record evidence suggesting that Draman was employed by SBG, and in fact he was not.

Draman claims that SCI should have paid him an additional $182,000,[2] but that under duress he signed the General Release extinguishing his claim. (The General Release is not a mutual release; Draman was not released from any obligations). Draman essentially argues that the General Release should be voided and that he should be given an offset for so much of his $182,000 claim as he may be able to prove.

However, the Draman Affidavit and the attachments thereto make it clear that the duress claim (or claim of "unclean hands") arises in connection with the General Release, not the CreditLine Agreement, and against SCI, not SBG. Draman alleges that <u>SCI, not SBG</u>,

---

[2]     Although it will not controvert the figures here, SBG does not waive any right to dispute Draman's calculation that he is owed $182,000, nor does SBG waive any right of SCI to bring a claim against Draman for amounts paid to him in consideration for the General Release, which Draman now seeks to have invalidated.

terminated him without cause, then "forced" him to sign a General Release. He claims that "Don Thompson, the Director of Human Resources and Vice President <u>of SCI</u> informed [him] that <u>SCI</u> was terminating [Draman's] employment, without cause . . .". Draman Affidavit at 2, ¶ 8 (emphasis added). Draman further claims that the CEO of SCI informed him that, "notwithstanding the Employment Agreement and the Amendment, <u>SCI</u> refused to pay" the salary and bonuses that allegedly would have been due as a consequence of termination without Cause. *Id*. at 2-3, ¶ 10 (emphasis added). Finally, he claims that Mr. Thompson <u>of SCI</u> informed him that Sinclair would make his life miserable if he did not sign the General Release. *Id*. at 3, ¶ 10.

Draman asserts these matters here, two years after he signed the General Release. It is plain that the General Release was a resolution of disputed claims between Draman and SCI. According to the terms of the General Release, Draman was to be paid seven months' salary after leaving SCI. *Id*. at § 1(a). He was to receive the use of a Lincoln Navigator for seven months. *Id*. at § 1(c). He was to receive continuation health benefits for four months. *Id*. at § 1(b). Draman acknowledged that he was advised to seek advice from counsel before signing the General Release and that he was afforded three weeks to do so. General Release at 2, § 4. He acknowledged that he had the right to revoke the General Release within seven days after signing it. *Id*.

Draman does not allege that there was anything other than full performance of the terms of the General Release. Now, after he has received the full benefit of the General Release, Draman conveniently claims that he entered into it under duress. But Draman's allegations of duress are completely irrelevant to this lawsuit. Simply put, SCI is a subsidiary of SBG, but the two are separate corporations. Draman cites no legal authority suggesting that unproven

liabilities of SCI may be imputed to SBG. Maryland law is to the contrary. "Under Maryland law, a corporate veil will be pierced only in the unusual case where it is necessary to prevent a fraud or enforce a paramount inequity [sic]. The existence of fraud or paramount inequity must be established by clear and convincing evidence." *Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F.Supp 2d 520, 538 (D.Md. 2001) (internal quotation and citation omitted). Draman's allegations of duress/unclean hands relate to SCI, not SBG, and cannot satisfy this test.

If Draman has a real dispute with SCI concerning his salary, bonuses, or other terms of his employment, his remedy is an action against SCI. The Employment Agreement mandates that any such disagreements between SCI and Draman must be arbitrated. *See* Employment Agreement attached as Exhibit A to Draman Affidavit at 10, § 8.12. The arbitration clause contains a "loser pays" provision. *Id*. Thus, Draman's exclusive remedy against SCI is arbitration. Further, even if Draman could avoid binding arbitration, the time for bringing a third party complaint in this action has passed: The Scheduling Order provides that the deadline for moving for joinder of additional parties was March 31, 2003. SCI cannot be joined in this lawsuit.

Draman's claim of duress/unclean hands is simply not a defense to the CreditLine Agreement, which was between Draman and NationsBank. The claimed duress/unclean hands and SCI's alleged liability for $182,000 cannot be used as a setoff against SBG. "Setoff is only available if the defendant has a right to receive the amount due <u>from the plaintiff</u> and the claim is of such a nature that it forms the basis for recovery in a court of law." *Imbesi v. Carpenter Realty Corp.*, 125 Md. App. 676, 681, 726 A.2d 854, 856 (1999) (citing *Ghinger v. Fanseen*, 166 Md. 519, 527, 172 A. 75 (1934), *Cohen v. Carp*, 143 Md. 208, 211, 122 A. 524 (1923)).

As stated above, Draman does not have colorable claim that Plaintiff, SBG, owes him $182,000. Draman's only claim is against SCI. A claim against one person cannot be used to offset a claim by a different person. In addition, Draman's alleged claim against SCI cannot form "the basis for recovery in a court of law." His sole remedy is binding arbitration. Accordingly, Draman's argument does not raise a genuine dispute of any fact material to this lawsuit. SBG is entitled to judgment in its favor as a matter of law.

### III. Conclusion

For the reasons stated above, the Court should grant summary judgment in favor of SBG.

                                                            /S/
Severn E. S. Miller, Fed. Bar No. 11617
THOMAS & LIBOWITZ, P.A.
Suite 1100
100 Light Street
Baltimore, Maryland  21202
Voice: (410) 752-2468
Fax:   (410) 752-2046

Attorney for Plaintiff,
Sinclair Broadcast Group, Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April, 2003, a copy of the foregoing Reply Memorandum of Sinclair Broadcast Group, Inc. in Further Support of Motion For Summary Judgment was Filed Electronically Pursuant To The Stated E-Filing Procedures Of This Court. Pursuant to those procedures, all other counsel are to receive copies electronically via the Court's e-filing system.

_____/S/_____
Severn E. S. Miller